# CIRCUIT COURT OF BALTIMORE CITY.

Filed March 29, 1928.

### EX PARTE TRUST ESTATE OF CHANNING LILLY.

*James Morfit Mullen* solicitor for individual beneficiaries.

*Willis R. Jones, Assistant Attorney-General,* for the State.

*Hinkley, Hisky & Burger* representing the petitioner, Safe Deposit and Trust Co., substituted trustee.

O'DUNNE, J.—

One Channing Lilly died, possessed of an estate of about $300,000. One-half thereof was located in Boston, Mass.; the other half in Baltimore, Maryland. Of the part located in Maryland one-half thereof was known as property No. 323 West Baltimore street, said to be worth about $80,000, and is all that now remains in the so-called "Trust Estate." This is the subject-matter of the present litigation which affects only the question of collateral inheritance tax, if any, and the rate, $2\frac{1}{2}\%$ or $5\%$.

Channing Lilly possessed in fee the entire property. He conveyed the whole to James Cummings, March 28, 1898. James Cummings *simultaneously* reconveyed the same to Channing Lilly, as trustee, to hold said property for the benefit of Frances E. Lilly, wife of Channing Lilly, for and during the term of her life, and upon the death of Frances E. Lilly, the trustee was to hold the said property for his use and benefit, if he survived his wife. In the event he did not survive his wife, the principal of the trust property was to be paid over and conveyed,

as directed by the last will and testament of Channing Lilly, or in default of such last will and testament, to his then heirs at law. Channing Lilly died in Boston, February 29, 1912. He was survived by his widow, Frances E. Lilly, who, in turn, died August 22, 1927. The Safe Deposit and Trust Company of Baltimore, was substituted as trustee in place of Channing Lilly, by order of the Circuit Court of Baltimore City, where the estate was administered. Channing Lilly left a last will and testament by which the trust property was devised and bequeathed to the children of Alonzo Lilly, the brother of the deceased Channing Lilly. Therefore, as it now passes to collateral heirs, the question arises as to whether the same is liable to the payment of collateral inheritance tax of Maryland, and if so, at what rate, 2½% or 5%?

It is not necessary to assume, or even suggest, that the grantor in this case had any intention or desire to evade the payment of the Maryland collateral inheritance tax. No such thought may have crossed his mind. He may not have been conscious of the existence of the Maryland statute. His sole object may have been to make suitable provision for his wife during the period of her life.

The *fact* remains, however, that in the means he adopted, he created what might be called a "straw trust" for his benefit, reserving to himself at all times the control of the property, with the sole exception of carving out of his fee a life estate for the benefit of his wife, which estate was held by him in trust for her. The trust was not even *irrevocable* in character, and might, with her consent, have been terminated at any time, even during her life. In addition to providing a life estate for his wife, the evident purpose of said deed shows that it was intended to provide for the possession of his property after his death.

It is contended that, under the authority of State vs. Safe Deposit and Trust Company, 132 Md. 251, there is no collateral inheritance tax payable, or, at worst, if subject to such tax, it is only subject to the tax at the rate of 2½%, and is not affected by the provisions of the Act of 1908, Ch. 695, increasing the rate to 5%.

It is true that in the above case our Court quoted with approval the following language:

"Words of a statute ought not to have a retroactive operation, unless they are so clear, strong and imperative that no other meaning can be annexed to them, or unless the intention of the Legislature can not otherwise be satisfied."

The opinion itself said:

"Insofar as statutes operate and affect the rights of parties, they are to be given a prospective interpretation only, whether the remainder is vested or contingent." (132 Md. at 253-4).

The Act of 1908 was there held *not to be retroactive*, and the property subject to a tax of only 2½% and not 5%.

The expression of a Court in the determination of a case must always be regarded as the expression of the law *as adapted to the facts of that case*, unless it is manifest that it is the recognition of a rule of law having *universal* application. Rules of this character are not so numerous.

It seems to me, the facts of the above case, in 132 Md., are easily distinguishable from the case at Bar, and that the rule announced as applicable *there*, because of the facts of that case, would not be applicable *here*.

Can it be soundly argued that Channing Lilly's title vested in him only since the James Cummings' deed to him in 1898, and that it was merely the title of a *"trustee,"* and that the title of trustee is separate and distinct from his beneficial interest? Such legal distinction exists, and is well recognized, and may be of importance as applied to facts in other cases where it may have an important legal bearing. Can we so far magnify the importance of *form*, as to fail to see *substance?* If given any such universal application, we would be confronted with a very simple, if not ingenious device, by which *anyone, at any time*, could by the device of a mere legal fiction always avoid the payment of increased rate in collateral inheritance tax, by at once conveying his property to a straw man and creating a straw trust, with *himself* as such "straw trustee," for himself, with power of testamentary disposition in the trustee. If not exercised, then to his right heirs, or to his next of kin. If, when he exercised the power of testamentary disposition, it could be said that upon devise to "collaterals," they took free

from any change in the collateral inheritance tax passed subsequent to his original title "in trust," one could always prudently resort to this "straw trust" as a precautionary device against the possibility of future increase in the rate of collateral inheritance tax-rate. The device appears too simple to be sound.

It seems to me, therefore, that the property is now affected by the Act of 1924, Ch. 413, as codified in Art. 81, Sec. 124, of the Code of 1924, which provides: *"All estates transferred by deed,* will, etc., made or intended to take effect in possession after the death of the grantor are subject to a collateral inheritance tax of 5% in every $100 of the clear value of such estate." Section 2 of said Act provides it shall be retrospective as well as prospective.

And, therefore, such decree should be signed by the Circuit Court as will require the payment of 5% collateral inheritance tax to the State of Maryland on the value of the property in question, said in argument to be some $80,000.